UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| S.W., a minor, by and through Next Friend, TAMMY WALSH, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 4:17-cv-01483-NCC<br>) |
| ROCKWOOD R-VI SCHOOL DISTRICT, ERIC KNOST, LISA COUNTS, CHARLES CROUTHER, and JENNIFER STRAUSER, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint[1] or, in the Alternative, for Summary Judgment (Doc. 11). The Motion is fully briefed and ready for disposition. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. 636(c)(1) (Doc. 18). For the following reasons, Defendants' to Dismiss Plaintiff's Complaint or, in the Alternative, for Summary Judgment (Doc. 11) will be **GRANTED, in part** and **DENIED, in part**, and Plaintiff will be permitted to amend her Complaint.

### I. Background

On April 5, 2017, Plaintiff S.W., by and through Next Friend, Tammy Walsh filed this action pursuant to 42 U.S.C. § 1983 and Missouri state law against Defendants Rockwood R-VI

---

[1] Plaintiff filed her action initially in state court and, therefore, her initial pleading is technically called a Petition. However, as Defendants and, later, Plaintiff refer to the pleading as a Complaint, to avoid confusion, the Court will do the same.

School District (the "District"), Eric Knost ("Knost"), the Superintendent of the District; Lisa Counts ("Counts"), the Assistant Superintendent of the District; Charles Crouther ("Crouther"), the Principal at Eureka High School ("EHS"); and Jennifer Strauser ("Strauser"), the Associate Principal at EHS (collectively "Defendants") in St. Louis County Circuit Court (Doc. 4). Defendants removed the case to the United States District Court for the Eastern District of Missouri on May 10, 2017 (Doc. 1). Plaintiff fails to indicate whether she sues Knost, Counts, Crouther, or Strauser (collectively the "Individual Defendants") in their official or individual capacities. Therefore, the Court will proceed as if the Individual Defendants were sued in their official capacities only. *Artis v. Francis Howell N. Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998) (finding that if a complaint fails to specifically name a public official in his or her individual capacity, it is presumed he or she is sued only in his official capacity). Plaintiff seeks money damages and an expungement of S.W.'s education records of the events at issue (Doc. 4 at ¶95).

Plaintiff raises the following claims against the Individual Defendants: Counts I & II: Defamation (Defendant Strauser); Count III: False Light Invasion of Privacy (Defendants Crouther and Knost); Count IV: Prima Facie Tort (Defendants Knost and Counts); Count V: Negligent Infliction of Emotional Distress (All Individual Defendants); Counts VI & VII: Section 1983 violations for property interest in public education, property and liberty interests in his reputation, liberty interest in being free of arbitrary and capricious punishment, and procedural right to due process (All Individual Defendants); and Count VIII: Civil Conspiracy (All Individual Defendants). Plaintiff also raises a Section 1983 claim against the District

2

(Count IX). Defendants now move to dismiss Plaintiff's Complaint or, in the alternative, for summary judgment (Doc. 11).

## II. Legal Standard

As a preliminary matter, the Court will treat Defendants' Motion as filed pursuant to Federal Rule of Civil Procedure 56. Defendants have moved to dismiss Plaintiff's complaint and alternatively for summary judgment but seek to convert the motion to dismiss to a motion for summary judgment (Doc. 11). Plaintiff also requested that the Motion be treated as a Summary Judgment Motion (*See* Doc. 15). Further, as is the case here, "[i]f matters outside the pleadings 'are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.'" *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quoting Fed. R. Civ. P. 12(d)).

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The initial burden is placed on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In determining whether summary judgment is appropriate in a particular case, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Benford v. Correctional Medical Services*, No. 1:11CV121 JAR, 2012 WL 3871948, at *4 (E.D. Mo. Sept. 6, 2012) (citing *Celotex Corp.*, 477 U.S. at 331). The Court's function is not to weigh

the evidence but to determine whether there is a genuine issue for trial. *Id.* (citing *Anderson*, 477 U.S. at 249). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011)).

### III. Relevant Undisputed Facts[2]

On February 10, 2016, S.W. brought two gothic masks to school so that he and J.S. could wear them (Doc. 27 at ¶¶6, 13; Doc. 39 at ¶¶6, 13; Pl.'s Ex. D at ¶1; Defs.' Ex. A at ¶8; Defs.' Ex. D at ¶9; Defs.' Ex. E at ¶9; Defs.' Ex. F).[3] S.W. wore the mask for a period of time while walking the school hallway before classes began (Doc. 27 at ¶13; Doc. 39 at ¶13; Pl.'s Ex. D at ¶3). At one point, S.W. lowered his mask and spoke to at least one student (Doc. 27 at ¶7; Doc. 39 at ¶7; Pl.'s Ex. D at ¶7). S.W. was not asked to remove the mask (Doc. 27 at ¶6; Doc. 39 at ¶6; Pl.'s Ex. D at ¶¶4-5). The school administration and the police were contacted about the incident (Doc. 27 at ¶21; Doc. 39 at ¶21; Defs.' Ex. A at ¶8; Defs.' Ex. D at ¶4; Defs.' Ex. E at ¶¶2-3). S.W. spoke with police that night (Doc. 27 at ¶29; Doc. 39 at ¶29; Pl.'s Ex. D at ¶25; Pl.'s Ex. H[4]).

---

[2] The facts are taken from Defendants' exhibits to their Memorandum in Support of their Motion, Plaintiff's Statement of Material Facts and attached exhibits (Doc. 27) and Defendants' Response to Plaintiff's Statement of Material Facts (Doc. 39).

[3] The Parties submitted various documents both as redacted versions available to the public and unredacted versions under seal. The Court cites to the unredacted versions as it has appropriately conducted its review from those versions but notes that the unredacted versions of the same documents largely follow the same pagination or subdivisions as the redacted versions. Furthermore, the names of minors will be identified by initials only.

[4] Defendants object to Plaintiff's Exhibit H, the Police Report, as containing hearsay within hearsay (*See, e.g.,* Doc. 39 at ¶16). The Court need not address this evidentiary issue at this stage as the Police Report will be used in this Order only to the extent that it shows that S.W.

On February 11, 2016, S.W. and his parents met with Defendants Charles Crouther and Jennifer Strauser (Doc. 27 at ¶33; Doc. 39 at ¶33; Pl.'s Ex. D at ¶26; Defts.' Ex. A at 2; Defs.' Ex. D at ¶¶6-7; Defs.'s Ex. E at ¶¶6-7). A representative from the Special School District appeared via telephone (Doc. 27 at ¶33; Doc. 39 at ¶33; Defs.' Ex. D at ¶7; Defs.' Ex. E at ¶7). During the meeting, Defendant Crouther advised S.W. of the allegations against him (Defs.' Ex. D at ¶¶8; Defs. Ex. E at ¶8). Specifically, Defendant Crouther indicated that the allegations against S.W. were that he wore the mask to school, had previously written the word "PREPARE" on his desk, and told other students he was going to "kill them all" (Defs. Ex. D at ¶6). S.W. denied that he said he was going to "kill them all" (Defs.' Ex. D at ¶9; Pl.'s Ex. D at ¶31).

Defendant Crouther suspended S.W. for ten school days (Defs.' Ex. D at ¶12). S.W. was provided with a previously prepared suspension notice describing the basis of the suspension (Doc. 27 at ¶33; Doc. 39 at ¶33; Defs.' Ex. D at ¶13; Pl.'s Ex. E). The text from the suspension notice was included in a Behavior Detail Report, a part of S.W.'s confidential education record (Defs.' Ex. D at ¶14-15; Pl.'s Ex. F). The text reads:

> On Wednesday, February 10, before school in the hallway, [S.W.] and another student were wearing skull masks that [S.W.] provided. They covered the lower half of their faces and frightened many students. [S.W.] is seen on camera walking up and down the hallway, confronting students silently in a menacing manner. At one point, [S.W.], seated on the floor, pulled the mask down and told a group of boys he was going to "kill you all" and then put the mask back up on the lower part of his face.

(Defs.' Ex. J). The video has no sound (Doc. 27 at ¶35; Doc. 39 at ¶35; Pl.'s Ex. D at ¶29). A second meeting took place on February 17, 2016 (Defs.' Ex. L at ¶5). Present at the meeting were S.W., his parents, and Defendants Counts and Knost (Defs.' Ex. L at ¶5). During the meeting S.W. was interviewed (Defs.' Ex. M).

---

spoke with the Police on February 10, 2016.

On February 25, 2016, a hearing was held to determine whether a suspension beyond ten days was warranted (Defs.' Ex. L at ¶6). S.W. and his parents were accompanied by a lawyer (Defs.' Ex. L at ¶7). Also present at the hearing were the District's attorney, the 9th Grade Principal, Defendant Crouther, a special education administrator, and an attorney representing the Special School District (Defs.' Ex. L at ¶7). Administrators presented the findings from the District's investigation including statements from two witnesses who heard S.W. say that he was going to "kill them all" (Defs.' Ex. L at ¶8). S.W. denied saying that he was going to "kill them all" (Defs.' Ex. L at ¶9). Two students appeared to testify on S.W.'s behalf (Doc. 4 at ¶39; Doc. 27 at ¶39; Doc. 39 at ¶39; Pl.'s Ex. A at ¶35). The students were not allowed to testify (Doc. 27 at ¶39; Doc. 39 at ¶39; Pl.'s Ex. A at ¶35).

The day after the hearing, Defendant Counts contacted S.W.'s mother via telephone and advised her that Defendant Knost had decided to extend S.W.'s suspension through the end of the school year (Defs.' Ex. L at ¶10). Defendant Counts further indicated that Defendant Knost would consider allowing S.W. to return to school sooner if S.W. provided an assessment from a private professional indicating that S.W. does not present a danger to others or himself (Defs.' Ex. L at ¶11). That same day, S.W.'s counsel sent an email to counsel for the District indicating that S.W. would be appealing the District's decision to extend S.W.'s suspension to the School Board (Defs.' Ex. O).

On February 29, 2016, Plaintiff was informed by letter of S.W.'s extended suspension through the end of the school year (Defs.' Ex. N). The letter, signed by Defendants Counts and Knost, provided, "If, however, [S.W] completes an assessment with a private professional indicating that he does not present a danger to others or himself and is safe to return to school,

6

we are willing to consider a written request for reducing the suspension" (*Id.*).

On March 11, 2016, counsel for the District sent a letter to S.W.'s counsel confirming S.W.'s request for a hearing before the School board and setting the hearing on March 23, 2016 (Defs.' Ex. Q). The District's attorney indicates:

> The District alleges that on February 10, 2016, [S.W.] engaged in threatening behavior and made threats to students by wearing a skull mask on school property in a frightening and menacing manner and by telling other students that he was going to kill them.

(*Id.*). Counsel further indicates that, "evidence will be presented and witnesses called to support the charges made. Your client has the right to be represented by counsel, to hear witnesses and evidence and to cross examine the witnesses, and to present witnesses and evidence" (*Id.*).

Prior to the date of the hearing, S.W. submitted to an exam and provided the District's attorney with a copy of the evaluation (Defs.' Ex. R). In response, Defendant Knost informed Plaintiff by letter that he intended to allow S.W. to return to school (Defs.' Ex. S). In the letter, Defendant Knost notes:

> shortening [S.W.'s] suspension and returning him to class . . . represents a decision of the District's administration, not the Board of Education. This decision is not binding, in any way, on the Board of Education should you choose to continue your appeal and participate in the appeal hearing . . . . If the appeal hearing takes place, I cannot guarantee the Board will agree with my decision to shorten the suspension. Moreover, it is probable that the Board's written decision may not be formally issued until after [S.W.'s] potential return . . .

(*Id.*). Defendant Knost continued, "If you wish to return [S.W.] to Eureka . . . and withdraw your request for an appeal hearing . . ." (*Id.*). S.W. and his parents canceled the School Board hearing (Defs.' Ex. T). After missing twenty-three days of school, S.W. returned to school on March 28, 2016 (Defs.' Ex. A at 3).

## III. Analysis

**A. Sovereign Immunity**

First, Defendants assert that the Individual Defendants are entitled to sovereign immunity on Plaintiff's state law tort claims because they have been sued in their official capacities (Doc. 11 at 3). Plaintiff does not object to Defendants' assertion but, instead, indicates that she will seek leave to amend her Complaint to name them in their individual capacities (Doc. 26 at 13). As of today's date, Plaintiff has not filed an amended complaint or a motion for leave to file an amended complaint with the Court.

Under Missouri law, a public entity is protected from tort liability subject to two exceptions. Mo. Rev. Stat. § 537.600. Sovereign immunity is waived in cases involving (1) injuries arising out of a public employee's operation of motor vehicle or (2) injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury. *Id.* Public entities may also waive their sovereign immunity for governmental functions to the extent that they are covered by liability insurance. *Southers v. City of Farmington*, 263 S.W.3d 603, 609 (Mo. 2008), *as modified on denial of reh'g* (Sept. 30, 2008). "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Therefore, sovereign immunity also applies against governmental officials sued in their official capacity. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

Plaintiff does not allege or provide any evidence of an exception to the District's sovereign immunity and, as previously discussed, the Individual Defendants have been sued in

8

their official capacities. Accordingly, Counts I, II, III, IV, and V shall be dismissed. Furthermore, the Court will also dismiss Count VIII of Plaintiff's Complaint because without Counts I-V, no underlying tort claim remains, and a civil conspiracy claim necessarily fails without an underlying tort claim. *See Jackson Cnty., Mo. ex. rel. Nixon v. MERSCORP, Inc.*, 915 F. Supp. 2d 1064, 1071 (W.D. Mo. 2013) ("In Missouri, if tortious acts alleged as elements of a civil conspiracy claim fail to state a cause of action, then the conspiracy claim fails as well."). The Court will permit Plaintiff to amend his Complaint.

**B. Qualified Immunity**

Next, Defendants assert that the Individual Defendants are entitled to qualified immunity on Plaintiff's Section 1983 claims in Counts VI and VII (Doc. 11 at 4). Qualified immunity shields public officials "from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009). To overcome a defendant's qualified immunity claim, the plaintiff must show that: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional right; and (2) the right was clearly established at the time of the deprivation." *Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010) (quotations omitted). "The law is clearly established if it gives the defendant officials 'fair warning' that their conduct violated an individual's rights when the officials acted." *Forrester v. Bass*, 397 F.3d 1047, 1054 (8th Cir. 2005) (citing *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002)); *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (A right is "clearly established" if "a reasonable official would understand that what he is doing violates that right"). If a state official violates a clearly established constitutional right, he is not

9

entitled to qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982).

As a preliminary matter, the Court notes that in considering qualified immunity "each [Individual Defendant's] conduct must be independently assessed . . . because liability for damages for a federal constitutional tort is personal." *Cross v. Mokwa*, 547 F.3d 890, 898 (8th Cir. 2008) (internal quotation marks omitted). Defendants fail to address their arguments at the individual actions of each Individual Defendant. Thus, in considering the early stage of the litigation, the Court could deny dismissal on this ground alone. However, the Court will address the merits of the Individual Defendants' claims in the interests of justice.

In her Complaint, Plaintiff alleges that the Individual Defendants violated four of S.W.'s constitutional rights: (1) his property interest in public education; (2) his property and liberty interest in his reputation; (3) his liberty interest in being free from arbitrary and capricious punishment; and (4) his right to procedural due process (Doc. 4 at 12-13). Defendants move to dismiss all four of these claims against the Individual Defendants on qualified immunity grounds (Doc. 13 at 27-32). In response to Defendants' motion, however, Plaintiff appears to only address the procedural due process claim and the arbitrary and capricious punishment claim (*See* Doc. 26 at 6-12). For example, while Plaintiff mentions the alleged reputational harm, Plaintiff asserts that this "perception is the result of a process that failed the standards of the Due Process guarantee" (*Id.* at 6). Plaintiff also fails to distinguish her property interest claim from the procedural due process claim. Accordingly, the Court will only address Plaintiff's procedural due process claim and arbitrary and capricious punishment claim on the merits.

**1. Procedural Due Process**

To prevail on a claim alleging a violation of Due Process, a plaintiff must establish (1)

10

that he was deprived of a constitutionally protected life, liberty, or property interest and (2) that he was deprived of that interest by the state without being provided sufficient process. *Krentz v. Robertson Fire Prot. Dist.*, 228 F.3d 897, 902 (8th Cir. 2000). Here, while Defendants concede that S.W. has a property interest in the right to public education, Defendants contest whether Defendant deprived S.W. of his interest and whether the deprivation of that interest was done without due process (Doc. 13 at 29). *Goss v. Lopez*, 419 U.S. 565 (1975) (holding that because Ohio maintained a school system that it required children to attend, the state was "constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause.").

### a. Property Interest

First, Defendants assert that S.W. was not deprived of any property interest in public education because "Plaintiff was not denied public education" (Doc. 13 at 29). Specifically, Defendants argue that because homebound educational services were provided to S.W. and administrators at the school were working with his parents to ensure he received his course assignments, he was not deprived of his property interest in a public education (*Id.*). Indeed, the evidence presented indicates that S.W. was provided homebound educational services once his suspension was extended for more than ten days (Doc. 13-1 at 2). However, "the intangible benefits of attending public school have long been recognized and protected by the federal courts." *Engele v. Indep. Sch. Dist. No. 91*, 846 F. Supp. 760, 765 (D. Minn. 1994) (citing *Brown v. Board of Education*, 347 U.S. 483, 493 (1954)). "[I]n determining 'whether due process requirements apply in the first place, we must look not to the 'weight' but to the *nature* of the interest at stake.'" *Goss*, 419 U.S. at 575-76 (quoting *Bd. of Regents of State Colleges v.*

11

*Roth*, 408 U.S. 564, 570-71 (1972)) (emphasis added). While the gravity of the loss inflicted by Defendants is a factor to weigh in determining what process was due S.W., it does not impact the Court's determination that he was entitled to the basic right of due process. *Engele*, 846 F. Supp. at 765 (citing *Roth*, 408 U.S. at 570-71). In this case, the Court concludes that although homebound educational services were provided to S.W., thus perhaps minimizing some of the effects of his suspension, S.W. was deprived of his protected property interest in attending public school. *Id.*

### b. Exhaustion

Defendants next assert that Plaintiff cannot sustain a procedural due process claim because S.W. failed to exhaust his administrative remedies by accepting the terms offered by Knost and canceling his hearing before the School Board (Doc. 13 at 31). "Exhaustion of state remedies is necessary before any federal procedural due process allegations state a claim under § 1983." *Wax 'N Works v. City of St. Paul*, 213 F.3d 1016, 1019 (8th Cir. 2000). "Although due process rights may be waived, a waiver of constitutional rights is not effective unless the right is intentionally and knowingly relinquished." *Davis Oil Co. v. Mills*, 873 F.2d 774, 787 (5th Cir. 1989). "In order to meet this requirement, a waiver must be (1) the product of a free and deliberate choice rather than intimidation, coercion, or deception," and (2) "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Sagehorn v. Indep. Sch. Dist. No. 728*, 122 F. Supp. 3d 842, 864-65 (D. Minn. 2015).

At this stage of the litigation and viewing the facts in the light most favorable to Plaintiff, the Court finds that S.W. and his parents' determination to cancel his hearing before the School

Board may not have been "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Washington v. Ladue Sch. Dist. Bd. of Educ.*, 564 F. Supp. 2d 1059, 1063 (E.D. Mo. 2008). On February 29, 2016, Plaintiff was informed by letter of S.W.'s extended suspension through the end of the school year (Defs.' Ex. N). The letter, signed by Defendants Counts and Knost, provided, "If, however, [S.W] completes an assessment with a private professional indicating that he does not present a danger to others or himself and is safe to return to school, we are willing to consider a written request for reducing the suspension" (*Id.*). S.W. submitted to such an exam and provided the District's attorney with a copy of the evaluation (Defs.' Ex. R). In response, Defendant Knost informed Plaintiff that he intended to allow S.W. to return to school (Defs.' Ex. S). However, Defendant Knost notes:

> shortening [S.W.'s] suspension and returning him to class . . . represents a decision of the District's administration, not the Board of Education. This decision is not binding, in any way, on the Board of Education *should you choose to continue your appeal and participate in the appeal hearing* . . . . If the appeal hearing takes place, I cannot guarantee the Board will agree with my decision to shorten the suspension. Moreover, it is probable that the Board's written decision may not be formally issued until after [Plaintiff's] potential return . . .

(*Id.*) (emphasis added). Defendant Knost continued, "If you wish to return [S.W.] to Eureka . . . *and* withdraw your request for an appeal hearing . . ." (*Id.*) (emphasis added). Thus, Defendant Knost inextricably linked S.W.'s return to school with his choice as to whether to dismiss his appeal before the School Board. Further, in the light most favorable to Plaintiff, when the Court puts this final statement in the context of the entire letter as well as Defendant Knost's authority, S.W. and his parents could have reasonably concluded that S.W. could not return to school if he chose to continue with his appeal before the School Board. Therefore, his decision to cancel the hearing before the School Board may not have been the product of a free and deliberate choice.

13

### c. Sufficient Process

Finally, Defendants assert that they afforded S.W. sufficient process both when they initially suspended S.W. for 10 days and then thereafter when they suspended him through the remainder of the school year (Doc. 13 at 33). The nature of the hearing required by due process depends on an "appropriate accommodation of the competing interests involved bearing in mind the nature of the governmental function involved and the private interest that will be affected by governmental action." *Goss*, 419 U.S. at 579. In this case, the Court must weigh "the competing interests between the effective administration of the educational system and the protection of a student's entitlement to receive an education within this system . . . ." *Dillon v. Pulaski Cty. Special Sch. Dist.*, 468 F. Supp. 54, 58 (E.D. Ark. 1978). The question before the Court is not whether Defendants followed their own procedure in disciplining S.W. but whether the procedure followed was constitutionally sufficient in light of the competing interests addressed above.

*Initial Ten Day Suspension*

At this stage of the litigation and viewing the facts in the light most favorable to Plaintiff, the Court finds that S.W. may not have been afforded sufficient due process when he was suspended for ten days. As Defendants correctly note, when facing a suspension of ten days or less, a student is only entitled to a "rudimentary hearing" which gives the student a chance "to present his side of the story." *Goss*, 419 U.S. at 581-82. *See also Dillon*, 468 F. Supp. at 58 ("[T]he necessity of a formal hearing including the right of cross-examination has generally been rejected in cases involving suspensions measured in days."). However, the undisputed facts indicate that S.W.'s suspension notice was written in advance of the initial February 11, 2016

meeting.

Further, Plaintiff raises several additional issues not controverted by Defendants that could reasonably lead one to believe that the first meeting did not afford S.W. a fair opportunity to be heard. For example, Plaintiff asserts that Defendant Strauser leaned over the table and, pointing at S.W., yelled that he had threatened to kill students (Doc. 27 at ¶39). In their response to this statement of fact, supported by S.W.'s affidavit, Defendants do not appear to respond to the behavior or provide any evidence to the contrary, instead noting "Immaterial/Unsupported/Disputed" and stating that a portion of the statement of fact was a statement of opinion (Doc. 39 at ¶37).

Finally, although there was a second meeting between Defendant Knost, Defendant Counts, S.W. and his parents after the ten-day suspension was issued, the Court cannot discern what occurred at the meeting—if S.W. was able to tell his side of the story and the termination of the suspension was a possibility, or if the meeting was merely a "courtesy" as Defendants suggest (Doc. 13 at 33). *Cf. Engele v. Indep. Sch. Dist. No. 91,* 846 F. Supp. 760, 766 (D. Minn. 1994) (finding a student had been given adequate process when although an initial meeting did not satisfy the requirement that the student be given an opportunity to explain his side of the story in a neutral setting, subsequent individual meeting met this requirement). Accordingly, the Court cannot be sure that S.W. received the "informal give-and-take" with school officials required by law. *See Goss,* 419 U.S. at 584. *See also* D*oe ex rel. Doe v. Todd Cty. Sch. Dist.*, 625 F.3d 459, 464 (8th Cir. 2010) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.").

*Subsequent Extended Suspension*

At this stage of the litigation and viewing the facts in the light most favorable to Plaintiff, the Court finds that S.W. may not have been afforded sufficient due process when he was suspended for more than ten days. In regard to disciplinary action which would have a more detrimental effect on a student than that imposed by a ten-day suspension, the Supreme Court noted that more formal procedures might be required. *Goss*, 419 U.S. at 584. Specifically, "due process may require that the student be permitted an opportunity to be heard, notice of the time and place of the hearing, right to counsel, and the right to confront the school official or teacher having primary knowledge of the facts relevant to the disciplinary proceeding." *Dillon*, 468 F. Supp. at 58.

As with the initial suspension, the facts regarding the process afforded S.W. at the second disciplinary hearing are in dispute and inconsistent. Specifically, the Court again cannot discern if S.W. was able to fairly present his side of the story. Given the nature of the underlying serious allegation against S.W., that he had threatened a group of students, and the District's ultimate decision to issue a long term suspension, the Court finds that sufficient process would require at least the ability to confront the school official or teacher having primary knowledge of the facts relevant to the disciplinary proceeding and, perhaps also, especially in light of the contested nature of these events, the ability present evidence and testimony on his behalf. Although represented by counsel, it is unclear if S.W. was able to confront the school official or teacher having primary knowledge of the facts relevant to the disciplinary proceeding or what affirmative information and support S.W. was able to present on his behalf. Defendants do not appear to contest that S.W. was unable to call two student witnesses and, while this fact is not

dispositive, the Court is troubled that S.W. may not have been afforded any opportunity to present evidence on his behalf (Doc. 27 at ¶39; Doc. 39 at ¶39; Pl.'s Ex. A at ¶35; Doc. 4 at ¶39). *Cf. Horton v. Marshall Pub. Sch.*, 769 F.2d 1323, 1334 (8th Cir. 1985) (finding in cases involving objective and typically indisputable facts, "it is sufficient that the school district give the student notice of the reasons for which he will be excluded from school and an opportunity to respond to and contest those reasons if the student desires").

### 2. Arbitrary and Capricious Punishment

Upon review of the Complaint and the Parties' briefs, the Court is unable to discern whether Plaintiff raises a first amendment claim with a focus on whether S.W.'s statement was a "true threat" or whether Plaintiff raises a substantive due process claim asserting Defendants' conduct was arbitrary and capricious in issuing the decision to suspend S.W. through the remainder of the school year. Further, to address the first amendment challenge, the Court would first need to find that S.W. made the alleged threatening statement and, as previously discussed, the Court is not prepared to do so at this stage of the litigation. Therefore, the Court will allow Plaintiff to amend her Complaint.

Accordingly, the Court will deny Defendants' Motion to Dismiss as to Plaintiff's procedural due process claim and grant Defendants' Motion to Dismiss as to Plaintiff's arbitrary and capricious punishment claim. Plaintiff will be permitted to amend her Complaint.

### C. *Monell* Liability

Finally, Defendants assert that the Court should dismiss Plaintiff's Count IX and enter judgment in favor of the District because Plaintiff fails to allege sufficient facts to establish an official policy or unofficial custom for municipal liability under Section 1983 (Doc. 13 at 36). In

*Monell v. Dep't of Social Services*, 436 U.S. 658 (1978), the United States Supreme Court held that an entity, such as the District, may be sued under Section 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the entity. 436 U.S. at 690. *See also A.R.K. v. Storz*, No. 4:13-CV-1653 CEJ, 2013 WL 6636128, at *3 (E.D. Mo. Dec. 17, 2013). Although Plaintiff need not identify the specific unconstitutional policy to at this stage, she must, at the very least, allege facts that would support the existence of an unconstitutional policy or custom. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004).

      The Court finds the Plaintiff has not sufficiently alleged facts which would support the existence of an unconstitutional official policy or unofficial custom to establish liability on the part of the District under Section 1983. In her Complaint, Plaintiff alleges, "Defendants acted under color of state law in accordance with the District's policies, customs, or practices when they suspended S.W. [from] EHS, extended his suspension, and required him to meet with a therapist before returning" (Doc. 4 at ¶93). However, Plaintiff's "allegations evidence only the exercise of discretion by school officials in carrying out official policies." *McCray v. Francis Howell Sch. Dist.*, No. 4:08CV1178 CDP, 2009 WL 1774319, at *5 (E.D. Mo. June 23, 2009). For the District to be liable under Section 1983, Plaintiff must allege facts sufficient to establish that the District had an unconstitutional official policy or widespread custom such that it is pervasive enough to be the force of law. *Nine v. Wentzville R-IV Sch. Dist.*, No. 4:11-CV-353 CEJ, 2012 WL 1247415, at *2 (E.D. Mo. Apr. 13, 2012) (quoting *Artis*, 161 F.3d at 1181). Plaintiff has failed to alleged facts sufficient to establish this liability. Accordingly, the Court will dismiss Count IX.

## IV. Conclusion

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Plaintiff's Complaint or, in the Alternative, for Summary Judgment (Doc. 11) is **GRANTED, in part** and **DENIED, in part**.

**IT IS FURTHER ORDERED** that Plaintiff shall have fourteen (14) days to file an Amended Complaint in accordance with this Order.

Dated this 30th day of November, 2017.

                                                   /s/ Noelle C. Collins
                                                   NOELLE C. COLLINS
                                                   UNITED STATES MAGISTRATE JUDGE